## ORAL ARGUMENT NOT YET SCHEDULED

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

No. 14-5304

---

ANGLERS CONSERVATION NETWORK, *et al.*,
*Appellants*,

v.

PENNY SUE PRITZKER, *et al.*,
*Appellees*.

---

On Appeal from the United States District Court for the District of Columbia
Lead Case No. 13-cv-01761 (Hon. Gladys Kessler)

---

## PROOF BRIEF FOR APPELLANTS

---

Roger M. Fleming
Erica A. Fuller
Stephen E. Roady
Earthjustice
1625 Massachusetts Ave., NW, Suite 702
Washington, DC 20036-2212
(202) 667-4500
rfleming@earthjustice.org
efuller@earthjustice.org
sroady@earthjustice.org

*Counsel for Anglers Conservation
Network, Captain Paul Eidman, Gateway
Striper Club, Inc., and Philip Lofgren*

March 16, 2015

## APPELLANTS' CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

Pursuant to D.C. Circuit Rule 28(a)(1), Anglers Conservation Network, Captain Paul Eidman, Gateway Striper Club, Inc., and Philip Lofgren (collectively, "Appellants") hereby certify as follows:

### (A) Parties and Amici

#### (i) Parties, Intervenors, and Amici Who Appeared in the District Court

Plaintiffs in District Court were Anglers Conservation Network, Paul Eidman, Gateway Striper Club, Inc., and Philip Lofgren. Defendants in District Court were Penny Sue Pritzker, National Oceanic and Atmospheric Administration, and National Marine Fisheries Service. No intervenors or *amici* appeared in this case.

#### (ii) Parties, Intervenors, and Amici in This Court

Appellants in this case are Anglers Conservation Network, Paul Eidman, Gateway Striper Club, Inc., and Philip Lofgren. Appellees in this case are Penny Sue Pritzker, National Oceanic and Atmospheric Administration, and National Marine Fisheries Service. There are currently no intervenors or *amici*.

#### (iii) Circuit Rule 26.1 Disclosures for Appellants

**Anglers Conservation Network** ("ACN") has no parent companies, and no publicly held company has a 10 percent or greater ownership interest in ACN. ACN, a corporation organized and existing under the laws of the State of New

1

Jersey, is a nonprofit organization dedicated to fostering stewardship of the waters fished by its members, promoting conservation ethics, and meeting the responsibilities of its members to future generations by conserving fish and the ecosystems on which they rely.

**Gateway Striper Club, Inc.** ("GSC") has no parent companies, and no publicly held company has a 10 percent or greater ownership interest in GSC. GSC, a corporation organized and existing under the laws of the State of New York, is a nonprofit organization with the purpose of discussing, practicing, and promoting the sport of surf fishing.

**(B)  Ruling Under Review**

This appeal involves the Order (ECF No. 35) and Memorandum Opinion (ECF No. 36) issued by the Honorable Gladys Kessler of the United States District Court for the District of Columbia on September 30, 2014 in *Anglers Conservation Network v. Pritzker*, Case No. 13-1761 (GK), --- F. Supp. 3d ---, 2014 WL 4977414.  Judge Kessler granted defendants' motion to dismiss.  As the appendix has not yet been assembled, Appellants cannot yet provide a reference to the place in the appendix where the rulings can be found.

**(C)  Related Cases**

This case has not been before this or any other appellate court previously. The related case *Anglers Conservation Network v. Pritzker*, Case No. 14-0509

(GK), which involves the same parties and relates to similar issues, is currently

pending in the United States District Court for the District of Columbia.

DATED:      March 16, 2015            Respectfully submitted,

/s/ Roger M. Fleming
ROGER M. FLEMING
D.C. Circuit Court No. 53917
ERICA A. FULLER
D.C. Circuit Court No. 53919
STEPHEN E. ROADY
D.C. Bar No. 926477
EARTHJUSTICE
1625 Massachusetts Avenue, N.W.
Washington, D.C. 20036
202-667-4500 Telephone
202-667-2356 Facsimile
rfleming@earthjustice.org
efuller@earthjustice.org
sroady@earthjustice.org

*Counsel for Appellants*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................... iii

GLOSSARY OF ACRONYMS AND ABBREVIATIONS................................... ix

JURISDICTIONAL STATEMENT ......................................................1

STATUTES AND REGULATIONS .........................................................2

STATEMENT OF ISSUES ...................................................................2

STATEMENT OF THE CASE..............................................................3

STATEMENT OF THE FACTS .............................................................7

   I.   The Magnuson-Stevens Act Requires All Stocks in Need of Conservation and Management to Be Added to an FMP ............................................7

   II.  Prior Litigation Addressing the Need to Manage River Herring ...................9

   III.   It Is Undisputed That River Herring and Shad Need Conservation and Management..............................................................................12

   IV.   The Magnuson-Stevens Act .......................................................14

   V.  The Development of Amendment 15 to the MSB FMP.................................18

   VI.   The Termination of Amendment 15 on October 8, 2013............................20

SUMMARY OF ARGUMENT ..............................................................22

STANDARD OF REVIEW .................................................................23

ARGUMENT .................................................................................24

   I.   The District Court erred in dismissing Appellants' FIRST claim AS NOT REVIEWABLE UNDER THE MAGNUSON STEVENS ACT.........................25

      A.  Appellees Took Reviewable Action Under Regulations Implementing the MSB FMP.............................................................................25

      B.  The District Court Opinion Contradicts the Magnuson-Stevens Act's Language and Congressional Intent to Make Fisheries Service Actions Reviewable.............................................................................35

   II.  The District Court erred in dismissing Appellants' FIRST claim AS NOT REVIEWABLE UNDER THE ADMINISTRATIVE PROCEDURE ACT .......41

A.   Appellants' Claim Was Entitled to the Presumption of Reviewability ......42

B.   The Fisheries Service's Termination of Amendment 15 is a Final Agency Action Reviewable Under the APA.....................................................................42

C.   The District Court Erred In Concluding that the Agency Did Not Have a Mandatory Duty to Add River Herring and Shad to the MSB FMP, and Thus That the Failure to Add These Stocks to the MSB FMP Was Not Reviewable Under the APA ...................................................................................................46

   1.   The District Court Failed to Read the Magnuson-Stevens Act as a Whole When It Found That the Agency Was Not Required to Take a Discrete Legally Required Action ..................................................................................47

      16 U.S.C. §1852(h)....................................................................................47

      16 U.S.C. §1854(e)....................................................................................49

      16 U.S.C. §1854(c)....................................................................................52

   2.   The District Court Did Not Accurately Characterize the Complaint.......57

CONCLUSION ..........................................................................................................59

CERTIFICATE REGARDING WORD LIMITATION ...........................................1

CERTIFICATE OF SERVICE .................................................................................2

# TABLE OF AUTHORITIES

**Cases**                                                                **Pages(s)**

*Anglers Conservation Network v. Pritzker*,
    Case No. 13-1761 (GK), --- F. Supp. 3d ---, 2014 WL 4977414
    (D.D.C. 2014) ........................................................................1, 5, 6, 13, 14, 26

*Bell Atl. Tel. Companies v. FCC*,
    131 F.3d 1044 (D.C. Cir. 1997)........................................................54

*Biodiversity Legal Found. v. Norton*,
    285 F. Supp. 2d 1 (D.D.C. 2003)......................................................44

*Campanale & Sons, Inc. v. Evans*,
    311 F.3d 109 (1st Cir. 2002)............................................................29

*Cobell v. Norton*,
    240 F.3d 1081 (D.C. Cir. 2001)..................................................44, 51

*Commonwealth of Pa. v. Lynn*,
    501 F.2d 848 (D.C. Cir. 1974)........................................................53

*Dewsnup v. Timm*,
    502 U.S. 410 (1992) (Justice Scalia, dissenting)................................31

*Escoe v. Zerbst*,
    295 U.S. 490 (1935)......................................................................53

*FDIC v. Meyer*,
    510 U.S. 471 (1994)......................................................................37

*Felter v. Kempthorne*,
    473 F.3d 1255 (D.C. Cir. 2007)..................................................23, 57

* *Flaherty v. Bryson*,
    850 F. Supp. 2d 38 (D.D.C. 2012)........... 9, 10, 11, 30, 33, 34, 40, 48, 53, 54, 55

*Authorities upon which we shiefly rely are marked with an asterisk

iii

*Green v. Bock Laundry Mach. Co.*,
   490 U.S. 504 (1989)..................................................................47

\* *Guindon v. Pritzker*,
   31 F. Supp. 3d 169, 198 (D.D.C. 2014).....................................9, 30, 53

*Heckler v. Chaney*,
   470 U.S. 821 (1985)..................................................................42

*Indep. Equip. Dealers Ass'n v. EPA*,
   372 F.3d 420 (D.C. Cir. 2004).....................................................43

\* *Kucana v. Holder*,
   558 U.S. 233 (2010)..................................................................42

*Marshall Cnty. Health Care Auth. v. Shalala*,
   988 F.2d 1221 (D.C. Cir. 1993)....................................................42

\* *Mass. v. EPA*,
   549 U.S. 479 (1985)..................................................................42

*Nat'l Ass'n of Home Builders v. U.S. Army Corps of Eng'rs*,
   417 F.3d 1272 (D.C. Cir. 2005)...............................................44, 45

*Natural Res. Def. Council v. Train*,
   510 F.2d 692 (D. C. Cir. 1974)....................................................34

*Norton v. S. Utah Wilderness Alliance*,
   542 U.S. 55 (2004)...............................................................46, 51

\* *Oceana, Inc. v. Pritzker*,
   24 F. Supp. 3d 49, 62 (D.D.C. 2014)..................................9, 11, 27, 40, 48

*Public Citizen v. Department of Justice*,
   491 U.S. 440 (1989)..................................................................31

*Raymond Proffitt Found. v. EPA*,
   930 F. Supp. 1088 (E.D. Pa. 1996).................................................34

*Robbins v. Reagan*,
   780 F.2d 37 (D.C. Cir. 1985).......................................................42

iv

*Rochon v. Gonzales*,
    438 F.3d 1211 (D.C. Cir. 2006) ..........................................................................23

*Salve Regina College v. Russell*,
    499 U.S. 225 (1991) .............................................................................................23

*SEC v. C.M. Joiner Leasing Corp.*,
    320 U.S. 344 (1943) .............................................................................................55

*Sparrow v. United Air Lines, Inc.*,
    216 F.3d 1111 (D.C. Cir. 2000) ..........................................................................57

*In re Tober*,
    688 F.3d 1160 (9th Cir. 2012) .............................................................................37

*U.S. Nat'l Bank v. Indep. Ins. Agents of Am.*,
    508 U.S. 439 (1993) .............................................................................................56

*U.S. v. Gaubert*,
    499 U.S. 315 (1991) .......................................................................................23, 57

*United States v. Garner*,
    767 F.2d 104 (5th Cir. 1985) ..............................................................................53

*United States v. Granderson*,
    511 U.S. 39 (1994) ...............................................................................................31

*Util. Air Regulatory Grp. v. EPA*,
    134 S. Ct. 2427 (2014) ........................................................................................56

**Statutes**

5 U.S.C. §551 ....................................................................................41, 42, 43

5 U.S.C. §701 ..................................................................................................1

5 U.S.C. §702 ......................................................................................1, 4, 41

5 U.S.C. §703 ..................................................................................................1

5 U.S.C. §704 ..........................................................................1, 4, 41, 43

5 U.S.C. §705 ..................................................................................................1

5 U.S.C. §706(1) ................................................................ 23, 41, 46, 48, 50, 51, 57

5 U.S.C. §706(2) ................................................................................ 4, 42, 47, 48

16 U.S.C. §1801(a)(2) ......................................................................................... 15

16 U.S.C. §1801(a)(5) ......................................................................................... 56

16 U.S.C. §1801(b)(1) ................................................................................... 14, 15

16 U.S.C. §1801, *et. seq*. .................................................................................... 17

16 U.S.C. §1802(5) ............................................................................................. 17

16 U.S.C. §1802(13) ............................................................................................. 9

16 U.S.C. §1851(a) ............................................................................................. 16

16 U.S.C. §1852 ................................................................................................. 29

16 U.S.C. §1852(h) ................................................................. 10, 31, 32, 46, 47, 48

16 U.S.C. §1852(h)(1) ......................................... 3, 5, 8, 9, 14, 16, 26, 30, 32, 54, 55

16 U.S.C. §1852(h)(3) ......................................................................................... 31

16 U.S.C. §1853(a)(1)-(15) ....................................................................... 32, 45, 54

16 U.S.C. §1853(a)(1)(A) ................................................................................... 16

16 U.S.C. §1853(a)(15) ............................................................................ 8, 9, 33, 34, 54

16 U.S.C. §1853(b) ............................................................................................. 33

16 U.S.C. §1853(b)(1)-(14) ................................................................................. 54

16 U.S.C. §1853(b)(2)(B) ................................................................................... 55

16 U.S.C. §1853(c) ............................................................................................. 30

16 U.S.C. §1854(a) ................................................................. 4, 10, 17, 26, 32, 34, 48

16 U.S.C. §1854(b) ................................................................................... 17, 32, 34

16 U.S.C. §1854(c) ................................................. 31, 32, 33, 34, 35, 51, 52, 54, 56

vi

16 U.S.C. §1854(c)(1)(C) .................................................................4

16 U.S.C. §1854(e) ................................................................49, 51

16 U.S.C. §1854(e)(1) ..................................................................49

16 U.S.C. §1854(e)(2) .............................................................49, 50

16 U.S.C. §1855(d) ............................................................8, 17, 26

16 U.S.C. §1855(f) ........................................................1, 26, 28, 35

16 U.S.C. §1855(f)(1) ....................................................25, 35, 36, 37

16 U.S.C. §1855(f)(2) ..................................................................37

16 U.S.C. §1855(f)(3) ...................................................................5

16 U.S.C. §1857(1)(A) .................................................................46

16 U.S.C. §1861(d) .......................................................................1

28 U.S.C. §1291 ...........................................................................1

28 U.S.C. §1331 ...........................................................................1

## Regulations

50 C.F.R. §600.310 .....................................................................26

50 C.F.R. §600.310(d) .................................................................27

50 C.F.R. §600.310(h)(3) .............................................................27

50 C.F.R. §648.1(a) .....................................................................27

50 C.F.R. §648.1(a), 648.20 – 648.27 ..........................................27

## Federal Register Notices

71 Fed. Reg. 61,022 (Oct. 17, 2006) ............................................13

76 Fed. Reg. 11,373 (Mar. 2, 2011) .........................................40, 48

76 Fed. Reg. 60,606 (Sep. 29, 2011) ................................................40, 48

76 Fed. Reg. 67,652 (Nov. 2, 2011)......................................................13

77 Fed. Reg. 19,138 (Mar. 30, 2012)....................................................54

78 Fed. Reg. 48,944, (Aug. 12, 2013) ..............................................12, 13

79 Fed. Reg. 10,029 (Feb. 29, 2013) ....................................................28

**Legislative History**

H.R. Rep. No. 101–393, at 28 (1990) ....................................................39

S. Rep. No. 101–414 at 22 (1990), *as reprinted in* 1990 U.S.C.C.A.N.
    6276, 6298.................................................................................38, 39

S. Rep. No. 109-229, at *6 (2006) .........................................................8

Pub. L. No. 109–479, §104(b), 120 Stat. 3575, 3584 (2007) ......................3, 7, 8, 33

Pub. L. No. 101-627; §104 Stat 4436 (1990)..........................................38

136 Cong. Rec. H229–06 (daily ed. Feb. 6, 1990) ...................................39

# GLOSSARY OF ACRONYMS AND ABBREVIATIONS

Pursuant to Circuit Rule 28(a)(3), the following is a glossary of acronyms and abbreviations used in this brief:

| | |
|---|---|
| Amendment 15 | Amendment 15 to the Mackerel Squid Butterfish Fishery Management Plan |
| ACL | Annual Catch Limit |
| ACN | Plaintiffs Anglers Conservation Network, Paul Eidman, Gateway Striper Club, Inc., and Philip Lofgren |
| APA | Administrative Procedure Act |
| Compl. | Complaint, *Anglers Conservation Network v. Pritzker*, Case No. 13-1761 (GK), 2014 WL 4977414, (D.D.C. 2014), ECF No. 1 |
| Council | Mid-Atlantic Fishery Management Council |
| FMP | Fishery Management Plan |
| Magnuson-Stevens Act or Act | Magnuson-Stevens Fishery Conservation and Management Act |
| MSB FMP | Mackerel Squid Butterfish Fishery Management Plan |
| NEPA | National Environmental Policy Act |
| NMFS or Fisheries Service | National Marine Fisheries Service or National Oceanic and Atmospheric Administration |
| Opinion | Opinion, *Anglers Conservation Network v. Pritzker*, Case No. 13-1761 (GK), 2014 WL 4977414, (D.D.C. 2014), ECF No. 36 |
| Secretary | Secretary of Commerce |
| Section 305 | 16 U.S.C. §1855(f) |

ix

## JURISDICTIONAL STATEMENT

(A) **District Court**.  This is an appeal from the final order of the district

court in *Anglers Conservation Network v. Pritzker*, Case No. 13-1761 (GK), --- F.

Supp. 3d ---, 2014 WL 4977414, (D.D.C. 2014).  The district court had jurisdiction

pursuant to the Magnuson-Stevens Fishery Conservation and Management Act

("Magnuson-Stevens Act" or "Act"), 16 U.S.C. §§1855(f), 1861(d); 28 U.S.C.

§§1331 (federal question jurisdiction), 1361 (an action to compel an officer of the

United States to perform his duty); and 5 U.S.C. §§701-706 (the Administrative

Procedure Act ("APA")).

(B) **Court of Appeals.**  This Court has jurisdiction over the present appeal

pursuant to 28 U.S.C. §1291.  This appeal is from the district court's final

memorandum opinion and order disposing of all claims with respect to all parties

on September 30, 2014.

(C) **Timeliness.**  Plaintiffs filed a timely notice of appeal within sixty days

of the district court's September 30, 2014 final memorandum opinion and order, as

required by Rule 3 and Rule 4(a) of the Federal Rules of Appellate Procedure.

(D) **Standing.**  Appellants are fishermen and members of the Anglers

Conservation Network and Gateway Striper Club dedicated to protecting and

restoring healthy river herring and shad populations. *See* Complaint at ¶¶8_-11,

*Anglers Conservation Network v. Pritzker*, Case No. 13-1761 (GK), 2014 WL

1

4977414, (D.D.C. 2014), ECF No. 1 ("Compl."), JA___. The failure of the National Marine Fisheries Service to establish science-based annual catch limits ("ACLs") and accountability measures for these species in the Mackerel Squid Butterfish Fishery Management Plan ("MSB FMP") in order to prevent overfishing has and will continue to adversely affect the appellants' use and enjoyment of these waters in the Mid-Atlantic. *See id.* ¶¶8-11, JA___.  These fishermen and the groups they represent have standing to litigate this case on behalf of their members, who live near, work and recreate in, and depend on the waters in this region that are most susceptible to loss of these populations and the predators that depend upon them. *See id.* ¶¶8-11, JA___.

## STATUTES AND REGULATIONS

Pertinent statutes and regulations appear in addenda to this brief.

## STATEMENT OF ISSUES

The issues raised on appeal are as follows:

1. Whether the district court erred in granting the National Marine Fisheries Service's motion to dismiss Appellants' first claim for failure to state a claim upon which relief can be granted, when the Fisheries Service violated the Magnuson-Stevens Act and the APA by taking final agency action to terminate rulemaking in Amendment 15 to the Atlantic Mackerel Squid and

Butterfish Fishery Management Plan, an amendment initiated in order to add river herring and shad species to the plan.

2.  Whether the district court erred in granting the National Marine Fisheries Service's motion to dismiss Appellants' first claim for failure to state a claim upon which relief can be granted, when the Fisheries Service violated the Magnuson-Stevens Act and the APA by failing to carry out its discrete, legally required duty to ensure that a fishery management plan is developed and regulations implemented to manage and conserve river herring and shad species in federal waters.

## STATEMENT OF THE CASE

The Magnuson-Stevens Fishery Conservation and Management Act, 16 U.S.C. §§1801– 1891d, requires Appellees, the National Marine Fisheries Service, *et al.*, (collectively, the "Fisheries Service" or the "Agency" or "NMFS") to ensure that all stocks of fish that need conservation and management are included in fishery management plans ("FMPs"). 16 U.S.C. §§1852(h)(1); 1853(a); 1854(a); 1855(d); 16 U.S.C. §1853 Note, Pub. L. No. 109–479, §104(b), 120 Stat. 3575, 3584 (2007).  This is accomplished through the unique "rulemaking" process established in the Magnuson-Stevens Act that typically requires fishery management councils to prepare and submit fishery management plans to the Fisheries Service for approval based on whether such proposed plans comply with

3

the law. 16 U.S.C. §1854(a).  In those cases where the appropriate council fails to prepare and submit an FMP (or an amendment to an FMP) that complies with the Act's requirements for stocks of fish that require conservation and management, the Fisheries Service is authorized to prepare such plan or amendment. 16 U.S.C. §1854(c)(1)(C).

The Magnuson-Stevens Act provides for judicial review of regulations and other actions taken by the Fisheries Service on grounds specified in the Administrative Procedure Act. 16 U.S.C. §1855(f)(1), (2); 5 U.S.C. §706(2)(A)-(D).  The APA also confers a right of judicial review on a person adversely affected by final agency action for which there is no other adequate remedy in a court. 5 U.S.C. §§702, 704.  The APA provides that the reviewing court "shall … hold unlawful and set aside agency action, findings, and conclusions found to be … arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; contrary to constitutional right, power, privilege, or immunity; in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; [or] without observance of procedure required by law." 5 U.S.C. §706(2)(A) – (D); and shall "compel agency action unlawfully withheld or unreasonably delayed," *id*. §706(1).

Anglers Conservation Network, Captain Paul Eidman, Gateway Striper Club, Inc., and Philip Lofgren (collectively, "ACN") filed suit against the Fisheries

4

Service on November 7, 2013.  ACN argued, *inter alia*, that the Fisheries Service:
(1) violated the Magnuson-Stevens Act and APA by failing to add river herring
and shad to the Mackerel Squid Butterfish FMP despite adequate scientific support
of their need for conservation and management and a mandatory duty to do so
under the Act, 16 U.S.C. §1852(h)(1); and (2) violated the National Environmental
Policy Act and APA by failing to prepare an environmental impact statement for
termination of a major federal action that would significantly affect the quality of
the human environment. *See* Compl., JA___.  Under the Magnuson-Stevens Act,
the Fisheries Service had 45 days to provide an answer and a copy of the
administrative record. 16 U.S.C. §1855(f)(3).

On December 24, 2013, the parties filed a joint motion for an extension of
time to resolve issues related to the applicability of 16 U.S.C. §1855(f)(3) to this
case. *See* Joint Motion to Extend Time to File Responsive Pleading, *Anglers
Conservation Network*, ECF No. 12, JA___.  Judge Kessler granted this motion on
December 27, 2013 and reset the deadline for a response to January 24, 2014. *See*
December 27, 2013 Minute Order, JA___.  On January 13, 2014 the Fisheries
Service filed another motion for an extension of time, this time requesting relief
from the requirements of 16 U.S.C. §1855(f)(3) and announcing their intent to file
a motion to dismiss on grounds that ACN's claims were unreviewable under the
Magnuson-Stevens Act. *See* Defendants' Motion to Extend Time to File

5

Administrative Record, *Anglers Conservation Network*, ECF No. 13, JA___.  On

January 24, 2014, ACN opposed this motion on grounds that: (1) the Magnuson-

Stevens Act requires the Fisheries Service to produce an administrative record with

its response; and (2) in addition to judicial review under the Magnuson-Stevens

Act, ACN is entitled to judicial review under the APA, which also requires

production of the record in front of the agency at the time of its decision. *See*

Plaintiffs' Opposition to Defendants' Motion to Extend Time to File the

Administrative Record, *Anglers Conservation Network*, ECF No. 16, JA___.

Judge Kessler denied ACN's opposition on grounds that the Court does not require

an administrative record in order to adjudicate a motion to dismiss pursuant to Fed.

R. Civ. P. 12(b)(6). *See* Memorandum Order Granting Extension of Time, *Anglers*

*Conservation Network*, Feb. 26, 2014, ECF No. 22, JA___.

On January 24, 2014 the Fisheries Service filed its Motion to Dismiss. *See*

Defendants' Motion to Dismiss, Dkt. No 17, JA __.  ACN filed its opposition on

June 2, 2014. *See* Plaintiffs' Memorandum of Law in Opposition to Defendants'

Motion to Dismiss, *Anglers Conservation Network*, ECF No. 28, JA___.  The

Fisheries Service filed its response on June 17, 2014. *See* Defendants' Reply in

Support of Their Motion to Dismiss, *Anglers Conservation Network*, ECF No. 29,

JA___.  The district court granted the Fisheries Service's motion to dismiss on

September 30, 2014. *Anglers Conservation Network v. Pritzker*, Case No. 13-1761

(GK),  --- F. Supp. 3d ---, 2014 WL 4977414 (D.D.C. 2014).  ACN filed a timely

notice of appeal on December 1, 2014. *See* Plaintiffs' Notice of Appeal, *Anglers*

*Conservation Network*, ECF No. 37, JA___.

## STATEMENT OF THE FACTS

I.  <u>**The Magnuson-Stevens Act Requires All Stocks in Need of Conservation and Management to Be Added to an FMP**</u>

In recognition of the undisputed evidence that river herring and shad are

severely depleted and require conservation and management in federal waters,

Appellees and the Mid-Atlantic Council – acting consistent with the Magnuson-

Stevens Act's unique rulemaking process and their discrete and legally required

duty to ensure such management – initiated an action to add river herring and shad

to the Atlantic Mackerel Squid and Butterfish FMP.  After 16 months of work

preparing the amendment and environmental impact statement, the Fisheries

Service terminated Amendment 15 and failed to fulfill its statutory duty to ensure

that stocks in need of conservation and management – in this case river herring and

shad – are managed under a federal FMP.

Congress reauthorized the Magnuson-Stevens Act in 2006 to address

continued concerns regarding management of the nation's fisheries and required

annual catch limits and accountability measures for all fisheries by 2011 (2010 for

overfished fisheries). *See* Magnuson–Stevens Fishery Conservation and

Management Reauthorization Act of 2006, Pub. L. No. 109–479, §104(b), 120

7

Stat. 3575, 3584 (2007).  Congress recognized that even ten years after the Sustainable Fishing Act was enacted, overfishing still occurred and science-based catch limits were necessary to achieve greater accountability in fisheries management. S. Rep. No. 109-229, at *6 (2006).   In relevant part, the Magnuson-Stevens Reauthorization Act amended §303(a) of the Magnuson-Stevens Act to require that any fishery management plan "establish a mechanism for specifying annual catch limits in the plan (including a multiyear plan), implementing regulations, or annual specifications, at a level such that overfishing does not occur in the fishery, including measures to ensure accountability." Pub. L. No. 109–479, §104(a)(10), 120 Stat. 3575, 3584 (2007), codified as amended at 16 U.S.C. §1853(a)(15).  The Agency has a duty to carry out FMPs or amendments in accordance with the Act, and may promulgate such regulations as may be necessary to carry out any plan or any other provision of the Act. 16 U.S.C. §1855(d).

The Act requires that councils prepare an FMP or amendment for each fishery that requires conservation and management. 16 U.S.C. §1852(h)(1).  A fishery is defined broadly to include "one or more stocks of fish which can be treated as a unit for purposes of conservation and management." *Id.* at §1802(13). FMPs must include the conservation and management measures that are "necessary and appropriate for the conservation and management of the fishery, to

8

prevent overfishing and rebuild overfished stocks, and to protect, restore, and promote the long-term health and stability of the fishery." *Id*. §1853(a)(1)(A). The reauthorized Act required the Agency to set ACLs and implement accountability measures by 2011 "such that overfishing does not occur in the fishery." 16 U.S.C. §1853(a)(15).

In order to set ACLs and accountability measures in the fishery, managers must make a "decision as to which stocks require conservation and management." *Oceana, Inc. v. Pritzker*, 24 F. Supp. 3d 49, 62 (D.D.C. 2014) (citing *Flaherty v. Bryson*, 850 F. Supp. 2d 38, 52 (D.D.C. 2012)); *see also* 16 U.S.C. §§1802(13), 1853(a)(15). If the Council fails to fulfill a statutory responsibility – *i.e.* to prevent overfishing by adding all stocks in need of conservation and management to an FMP – the Secretary is the backstop. *See Guindon v. Pritzker*, 31 F. Supp. 3d 169, 198 (D.D.C. 2014); *Flaherty*, 850 F. Supp. 2d at 54-55.

## II.    Prior Litigation Addressing the Need to Manage River Herring

The Agency has resisted the statutory mandate to prepare an FMP for all stocks in need of conservation and management as required by 16 U.S.C. §1852(h)(1). In 2011, plaintiffs challenged the Fisheries Service's failure to add river herring and shad as stocks in the Atlantic Herring Fishery Management Plan – a plan initiated to bring the Atlantic herring fishery into compliance with new ACL and accountability measure requirements. The district court held that the

9

Fisheries Service violated the Magnuson-Stevens Act by failing to consider adding river herring and shad to the Atlantic Herring FMP consistent with requirements of the Act and the applicable statutory deadline. *Flaherty*, 850 F. Supp. 2d at 52-56 (noting that "the [Magnuson-Stevens Reauthorization Act] requires ACLs and [accountability measures] for *all* stocks in need of conservation and management") (emphasis in original).

The *Flaherty* court outlined the relevant statute-based analysis when determining whether a stock should be added to an FMP: (1) determine which stocks can be treated as a unit for purposes of conservation and management and thus should be considered a fishery and managed together in a plan; and (2) determine which of these stocks require conservation and management based on the facts and the best available science. 850 F. Supp. 2d at 51.  The court also explained that the Fisheries Service must review council decisions for compliance with applicable law and standards because "councils do not have unlimited and unreviewable discretion to determine the make-up of their fisheries," and decisions must be based on the statutory criteria and reviewed by the Fisheries Service to ensure that they comply with the law. *Id.* at 56.  The court concluded that the Agency's failure to ensure compliance with 16 U.S.C. §1852(h), through the plan review provisions of 16 U.S.C. §1854(a) by considering the addition of river herring and shad to the Atlantic Herring FMP in Amendment 4, was a reviewable

10

action even in the absence of publication of that action in the federal register or promulgation of a regulation addressing the composition of the fishery. *Id.* at 54-56 ("Simply put, [a regulation directing the council to identify the stocks included in a plan] cannot be understood to permit NMFS to ignore its duty to ensure compliance with the [Magnuson-Stevens Act].").

In the Mid-Atlantic, plaintiffs challenged the Agency's failure to include river herring as a non-target stock in the Omnibus Amendment – an amendment initiated to satisfy the new requirements in the six fisheries managed by the Mid-Atlantic Fishery Management Council. *Oceana*, 24 F. Supp. 3d 49. The *Oceana* court found the Agency's argument that it was only required to bring *existing* FMPs into compliance "unavailing," and affirmed the *Flaherty* finding that the statute requires "a decision as to which stocks require conservation and management." *Oceana*, 24 F. Supp. 3d at 63 (holding the Fisheries Service acted reasonably in declining to consider the addition of non-target bycatch stocks in the Amendment because plaintiffs presented no evidence that overfishing was occurring). As in *Flaherty*, the Agency's failure to consider adding river herring and shad to the Omnibus Amendment was reviewed by the court even in the absence of a promulgated regulation published in the federal register. 24 F. Supp. 3d at 61.

## III.   It Is Undisputed That River Herring and Shad Need Conservation and Management

River herring and shad are important forage fish in the ocean ecosystem. Compl. ¶47, JA___.  As "anadromous" species that spawn in rivers but spend the majority of their life cycles at sea, river herring and shad play a critical role in the biology of rivers, estuaries, and ocean waters along the Atlantic seaboard as prey, or "forage," for many species of fish, birds, and marine mammals. Id.  Once abundant throughout the region, river herring and shad populations have declined to historic lows in recent decades as a result of overfishing, habitat loss, and other factors.  Compl. ¶48, JA___; *see also* 78 Fed. Reg. 48,944, 48,946-48 (Aug. 12, 2013), JA___-__.  Coastwide commercial landings for river herring and shad have declined precipitously in the last fifty years, including a 97 percent decline in commercial landings of river herring from 1985 to 2009. Compl. ¶48. Various population surveys spanning more recent time frames show similar declining trends for these species. Compl. ¶48, JA___; *see also* 78 Fed. Reg. 48,946-48, JA___-__.

The most recent stock assessment for river herring found that 23 of 24 adequately assessed stocks were depleted, including ten stocks that were listed as overfished in part due to ocean intercept fisheries. Compl. ¶49, JA___.  The most recent stock assessment for shad found that stocks were at all-time lows and did

12

not appear to be recovering to sustainable levels. Compl. ¶49, JA___. Specifically in the Mid-Atlantic region, the best available science notes that "[r]ecent … declines may have been triggered by overharvest in marine fisheries," and finds that Mid-Atlantic populations are particularly in need of conservation. Compl. ¶50, JA___. River herring and shad are inextricably involved in the mackerel fishery where they are landed and sold with mackerel as bait; incidental catch of these species has been identified as an ongoing threat. Compl. ¶58, JA___; *see also* Plaintiffs' Opposition to Motion to Dismiss, *Anglers Conservation Network*, ECF No. 28 at 12-15, JA___-__. These fisheries are dominated by industrial midwater trawl vessels that can catch millions of pounds of river herring and shad per year and could catch an entire river run of river herring or shad with one tow of their net. *Id.*

Citing concerns over the "drastic decline in river herring populations throughout much of their range," the Agency's Protected Species Division designated river herring as a "*species of concern*" in 2006. Compl. ¶51, JA___; *see also* 71 Fed. Reg. 61,022 (Oct. 17, 2006), JA___. Although the Agency found that there was substantial scientific or commercial information indicating that listing river herring as a "threatened" species under the Endangered Species Act might be warranted, 76 Fed. Reg. 67,652 (Nov. 2, 2011) , JA___, it ultimately declined to list them due to what it viewed as too much scientific uncertainty and data

deficiencies, stating that it would revisit its decision in 3-5 years. *See* 78 Fed. Reg.

at 48,994, JA___.  More than nine years after the Agency's original designation,

river herring remain a "*species of concern.*" Compl. ¶52, JA___.

Existing state and federal regulatory mechanisms have not rebuilt depleted

river herring and shad populations.  River herring and shad (as anadromous fish)

are managed by the Atlantic States Marine Fisheries Commission – an interstate

agency that confines the reach of its management plan to state waters.   The

Commission has concluded that river herring and shad are "depleted on a coast-

wide basis" and implemented a moratorium on fishing within state waters, with

limited exceptions where the sustainability of specific catch levels can be

demonstrated. Compl. at ¶54, JA___.  Despite millions of dollars spent in state

waters, these species have not been added as stocks to an FMP in federal waters,

even though there is an undisputed need for conservation and management. *See*

Opposition at 4, *Anglers Conservation Network*, ECF No. 28.

## IV.    <u>The Magnuson-Stevens Act</u>

The Magnuson-Stevens Act is designed to conserve and manage fish

populations in the United States territorial waters and exclusive economic zone,

which extends from the boundaries of state waters (3 miles from shore) to 200

miles offshore or to an international boundary with neighboring countries. 16

U.S.C. §1801(b)(1).  The Act creates eight regional fishery management councils

14

and mandates that each council "shall" prepare an FMP "for each fishery under its authority that requires conservation and management." 16 U.S.C. §1852(h)(1).

The Findings, Purposes, and Policy of the Act demonstrate Congressional intent that all stocks of fish that need conservation and management be brought under sound management, and that decisions about whether to manage such stocks are not optional.  For example, Congress found that some stocks of fish "have declined to the point where their survival is threatened . . . as a consequence of (A) increased fishing pressure, (B) the inadequacy of fishery resource conservation and management . . . or (C) direct and indirect habitat losses . . .," 16 U.S.C. §1801(a)(2), that "[f]ishery resources are finite but renewable . . . [i]f placed under sound management . . .," *id.* §1801(a)(5), and that "[a] national program for the conservation and management of the fishery resources of the United States is necessary to prevent overfishing, to rebuild overfished stocks, to insure conservation,  . . . and to realize the full potential of the Nation's fishery resources." *id.* §1801(a)(6).  The Act also explicitly declares that it is the purpose of Congress  "to take immediate action to conserve and manage the fishery resources found off the coasts of the United States…," 16 U.S.C. §1801(b)(1), "to promote … fishing under sound conservation and management principles," *id.* §1801(b)(3), and "to provide for the preparation and implementation … of fishery management plans…" *id.* §1801(b) (4).  Finally, Congress declared it is the policy

15

of Congress to assure that the national fishery conservation and management program is based upon "the best scientific information available" and is "responsive to the needs of … interested citizens" and maintains the "diversity of fisheries in the United States." *See id.* §1801(c)(3), (6).

To help achieve these national goals, Congress mandated that once it is determined a stock of fish requires conservation and management, the decision whether to bring that stock under management in a FMP is not optional. The Magnuson-Stevens Act requires each Council, in accordance with the Act, to proceed as follows: "for each fishery under its authority that requires conservation and management, prepare and submit to the Secretary (A) a fishery management plan, and (B) amendments to each such plan that are necessary from time to time (and promptly whenever changes in conservation and management measures in another fishery substantially affect the fishery for which such plan was developed)." 16 U.S.C. §1852(h)(1). The FMPs, FMP amendments, and any regulations promulgated to implement such FMPs, must be consistent with the "national standards" for fishery conservation and management, and certain other requirements. 16 U.S.C. §1851(a).

Plans must also "contain the conservation and management measures … necessary … to prevent overfishing and rebuild overfished stocks, and to protect, restore, and promote the long-term health and stability of the fishery." 16 U.S.C.

16

§1853(a)(1)(A).  The definition of "conservation and management" requires that the decision whether to add a stock to an FMP be based on the need for rebuilding, restoring, or maintaining the resource and the marine environment, assuring a food supply and recreational benefits, and avoiding long-term adverse effects on fishery resources and the marine environment. 16 U.S.C. §1802(5).

Under the Magnuson-Stevens Act's unique rulemaking process, the Secretary is the decision-maker.  All FMPs and regulations implementing FMPs initially prepared by councils are subject to final review and approval by the Secretary to ensure that they comply with the requirements of the Magnuson-Stevens Act, as well as with other applicable laws and requirements. 16 U.S.C. §1854(a), (b).  If a council fails to develop an FMP or amendment for a fishery that requires conservation and management within a reasonable period of time, the Secretary is required to prepare it herself in accordance with the Act, the National Standards, and any other applicable law. 16 U.S.C. §1801, *et. seq*.  The Secretary has the responsibility to carry out any FMP or amendment approved or prepared by her in accordance with the Magnuson-Stevens Act. 16 U.S.C. §1855(d).  The Secretary may promulgate such regulations as may be necessary to carry out this responsibility or to carry out any other provisions of the Magnuson-Stevens Act. *Id*.

17

## V.    The Development of Amendment 15 to the MSB FMP

The Council was poised to add the four species of river herring and shad as stocks in Amendment 14 to the MSB fisheries, with a commitment to "kick off" another amendment to fully develop the required conservation and management measures. Compl. ¶¶71-73, JA___-__.  The Amendment 14 Draft EIS included extensive analysis of the alternatives that would have added river herring and shad as stocks in the MSB FMP. Compl. ¶71, JA___.   However, after months of participating in the development of Amendment 14, the Agency sent a letter recommending the Council limit its scope of Amendment 14 and advising them to initiate another amendment to add river herring and shad to the FMP to avoid delay.  Compl. ¶72, JA___.  The Council took this advice and immediately initiated Amendment 15 to add river herring and shad. Compl. ¶73, JA___.

To develop Amendment 15, a Fishery Management Action Team, comprised primarily of staff from the Fisheries Service, was formed. Compl. ¶76, JA___.  The Fishery Management Action Team was responsible for developing alternatives and providing recommendations prior to Council input on the Draft EIS. *See* Exhibit 2, Anglers Conservation Network, ECF No. 28-3, 5-6, JA___-__.  In October 2012, the Fisheries Service published a notice of intent "to prepare an amendment (Amendment 15) to the Fishery Management Plan (FMP) for Atlantic Mackerel, Squid, and Butterfish (MSB) . . .." *See* Notice of Intent to

18

Prepare an Environmental Impact Statement, 77 Fed. Reg. 65,867 (Oct. 31, 2012), JA___.

After the Council initiated Amendment 15, the Agency began to provide the Council with new guidance on the addition of these species to the mackerel plan. Compl. ¶77, JA___.  Just prior to the June 2013 Mid-Atlantic Council meeting, the Agency sent a letter outlining its analysis of the "necessity" of federal management for river herring and shad. *Id*., JA___.  This advice ignored the statutory process outlined in the Magnuson-Stevens Act, the statutory definition of "conservation and management," and the Flaherty decision. *Id*., JA___.  Instead, the Agency advised the Council that unless river herring and shad were formally designated as "overfished," it should apply a cost-benefit analysis. *See* Exhibit 3, Anglers Conservation Network, ECF No. 28-4, 2, JA___.  As a result of this advice, Council staff was directed to write a memorandum regarding whether "additional management" of river herring and shad was necessary, based on the Fisheries Service's new guidance. Compl. ¶78, JA___.

With review and input from Agency employees on the FMAT Team, Council staff prepared the memorandum regarding the necessity of "additional management," for use at the October 2013 Mid-Atlantic Council meeting. Compl. ¶78, JA___.  Consistent with the new guidance, this memorandum strongly suggested that the decision regarding whether or not to include river herring and

19

shad as managed stocks in the MSB FMP should be based on application of
National Standards 3 and 7 and their (non-binding) guidelines. Compl. ¶¶79, 80,
JA___, __.  While the measures contained in an FMP must ultimately be consistent
with the national standards, reliance on the standards when deciding whether or not
to add a stock to a plan unlawfully introduced a "cost-benefit" analysis that is
inconsistent with both the plain language of the Act and the legal analysis in the
only court case directly on point. *Id.*

## VI.    <u>The Termination of Amendment 15 on October 8, 2013</u>

On October 8, 2013, the Council was poised to discuss further development
of Amendment 15. *See* Compl. ¶77-83, JA___-__.  More than 37,000 written
public comments were received in favor of continuing development of the Draft
Environmental Impact Statement, and only one comment – from the largest
company involved in the mackerel fishery – was submitted against its further
development. Comp. ¶81.  Members of the Council either conceded, or never
disputed, that these species are in need of conservation and management. Compl.
¶86, JA___.  In addition to numerous fishermen and other members of the public,
the Atlantic States Marine Fisheries Commission also spoke in favor of moving
Amendment 15 forward. Compl. ¶81, JA___.

Although Agency staff was furloughed due to the 2013 federal government
shutdown, the Regional Administrator for the Fisheries Service (John Bullard)

20

attended and participated in the meeting, thereby demonstrating that the Agency

viewed the Amendment 15 decision as a federal regulatory action. *See* Plaintiffs'

Memorandum of Law in Opposition to Defendants' Motion to Dismiss, *Anglers*

*Conservation Network*, ECF No. 28, at 29, JA___.   The Regional Administrator

argued vigorously against moving forward with Amendment 15, asserting there

was a financial inability to complete development of the Draft Environmental

Impact Statement. Compl. ¶¶82, 84, JA___, __.  He also opposed adding river

herring and shad to the MSB FMP based on a number of factors not relevant to the

applicable legal standards, including "tradeoffs" that would have to occur if they

were added due to lack of resources.  After a long discussion, the Regional

Administrator cast the deciding vote to terminate the Amendment. Compl. ¶84,

JA___.

As a purported alternative to federal management, the Regional

Administrator supported the formation of a "working group," which was described

by the council member who made the motion to terminate Amendment 15 and

create the working group instead as intended to take any work on the issue out of

the Magnuson-Stevens Act regulatory process. Compl. ¶85 - 86, JA___-__.  This

"working group" has no management authority, has no regulatory mandate to

(ever) complete any specific work, and is intended to "study" the issue for at least

another three years. Compl. ¶¶85-86, JA___-__.   This "working group" approach

21

will not satisfy the Agency's duties to add all species involved in a fishery that require conservation and management to a fishery management plan and to ensure that the MSB FMP complies with the law.

## SUMMARY OF ARGUMENT

The Magnuson-Stevens Act requires the Fisheries Service to establish comprehensive fisheries management plans for all stocks of fish that require conservation and management.  Appellants challenged the Fisheries Service's failure to comply with this legal duty when it terminated rulemaking to include four species of river herring and shad in the Atlantic Mackerel Squid and Butterfish Fishery Management Plan, despite the undisputed evidence demonstrating these fish are caught in the mackerel fishery and require conservation and management.

First, the district court erred in granting the Fisheries Service's motion to dismiss Appellants' claim on grounds that it was not reviewable under the Magnuson-Stevens Act.  Section 305(f) authorizes judicial review of the final agency action taken to terminate Amendment 15 – rulemaking initiated to add river herring and shad to the Atlantic Mackerel Squid and Butterfish Fishery Management Plan.

Second, the district court erred in granting the Fisheries Service's motion to dismiss Appellants' first claim on grounds that it was not reviewable under the

APA. The termination of the Amendment 15 rulemaking is a reviewable agency action under the APA. If the Court concludes that the Fisheries Service's termination of Amendment 15 is not reviewable agency action, then their failure to act to add river herring and shad to an FMP is reviewable. Section 706(1) of the APA authorizes a court to compel agency action unlawfully withheld where an agency fails to take a discrete agency action that it was required to take; in this case, the Fisheries Service failed to carry out its discrete, legally-required duty to ensure that a fishery management plan is developed and regulations implemented to manage and conserve river herring and shad species in federal waters.

## STANDARD OF REVIEW

The Court of Appeals reviews the district court's application and interpretation of law on a motion to dismiss under Fed. R. Civ. P. 12(b)(6), for failure to state a claim upon which relief can be granted, *de novo*. *Rochon v. Gonzales*, 438 F.3d 1211, 1216 (D.C. Cir. 2006). Under *de novo* review for legal error, the trial tribunal's decision receives no deference. *See Salve Regina College v. Russell*, 499 U.S. 225, 238 (1991) ("When *de novo* review is compelled, no form of appellate deference is acceptable."). In reviewing a motion to dismiss, this Court accepts all factual allegations in the complaint as true. *See U.S. v. Gaubert*, 499 U.S. 315, 327 (1991); *Felter v. Kempthorne*, 473 F.3d 1255, 1257 (D.C. Cir. 2007).

23

# ARGUMENT

The Magnuson-Stevens Act requires the Fisheries Service to establish comprehensive fishery management plans for all stocks of fish that require conservation and management. Appellants challenged the Fisheries Service's failure to comply with this legal duty when it terminated rulemaking to include four species of river herring and shad in the Atlantic Mackerel Squid and Butterfish Fishery Management Plan, despite the undisputed evidence demonstrating these fish are caught in the mackerel fishery and require conservation and management. The district court granted Appellants' motion to dismiss on grounds that it was not reviewable under the judicial review provision contained in the Magnuson-Stevens Act or the APA.

If the district court's strained misinterpretation of the Magnuson-Stevens Act and APA survives, Appellees will be able to avoid judicial review of decisions not to carry out core required provisions of the Act. Appellees will be able to escape accountability simply by terminating preparation of fishery management plans or plan amendments, or never taking them up in the first instance, at the council stage of rulemaking so that such decisions are never submitted for formal Secretarial review and publication in the federal register. Congress charged Appellees with the responsibility to ensure the Magnuson-Stevens Act's core provisions are met, including those requirement that the regional councils take up in the first instance.

24

The district court's opinion and order directly undermine the Magnuson-Stevens

Act and conflict with Congressional intent.

## I.    THE DISTRICT COURT ERRED IN DISMISSING APPELLANTS' FIRST CLAIM AS NOT REVIEWABLE UNDER THE MAGNUSON STEVENS ACT

The district court erred in dismissing Appellants' first claim as not

reviewable under the Magnuson-Stevens Act because Appellants took reviewable

action under regulations implementing the MSB FMP and the district court opinion

contradicts the Act's language and congressional intent to make Fisheries Service

Action reviewable.

### A. Appellees Took Reviewable Action Under Regulations Implementing the MSB FMP

The termination of rulemaking to add stocks of river herring and shad to the

Atlantic Mackerel, Squid and Butterfish FMP is an action reviewable under the

judicial review provision of the Magnuson-Stevens Act, 16 U.S.C. §1855(f); this

section provides for judicial review of (1) "Regulations promulgated by the

Secretary," and (2) "actions that are taken by the Secretary under regulations which

implement a fishery management plan." 16 U.S.C. §1855(f)(1), (2).  The review

provision also provides that a petition for review must be "filed within 30 days

after the date on which the regulations are promulgated or the action is published

in the federal register, as applicable." 16 U.S.C. §1855(f)(1).  In this case, it is

undisputed that Appellants filed their complaint within 30 days of the events on

October 8, 2013, formally terminating Amendment 15. Opinion at 10 n.6, *Anglers Conservation Network*, ECF No. 36 ("Opinion"), JA___ ("the Court accepts Plaintiffs' characterization of the October 8, 2013, vote [as formally terminating Amendment 15] as true."). Under Appellants' first claim, challenged here, Appellants claimed that the Fisheries Service took action under the regulations that define all Mid-Atlantic fisheries, including, specifically, the MSB FMP, and the composition of the fishery (which already contemplated the addition of river herring and shad consistent with the National Standard 1 guidelines), when the Secretary terminated rulemaking to add river herring and shad to the MSB FMP consistent with her mandatory duty to do so by the 2011 statutory deadline.

The district court erred when it concluded that the termination of Amendment 15 was not an "action … taken by the Secretary" under a regulation within the meaning of §1855(f). Opinion, *Anglers Conservation Network*, 14-16 n.9, JA___-__. The Magnuson-Stevens Act and its implementing regulations require the councils in the first instance, and ultimately the Fisheries Service, to add stocks of fish that require conservation and management, such as river herring and shad, to the MSB FMP and to promulgate the regulations necessary to manage them. *See* 16 U.S.C. §§1852(h)(1), 1854(a)(1)-(3), 1855(d). The National Standard 1 guidelines, codified at 50 C.F.R. §600.310, direct the councils to describe the species of fish involved in the fishery in order to add species to an FMP consistent

26

with the required and discretionary measures in the Act. *See* 50 C.F.R.

§§600.310(d); *see also* 50 C.F.R. §600.310(h)(3) (ACLs and accountability

measures will be reviewed for consistency with the Magnuson-Stevens Act).  The

National Standard 1 guidelines were revised in 2009 expressly to provide guidance

for councils when developing the new ACL and accountability measures required

by the 2011 statutory deadline. *See Oceana v. Pritzker*, 24 F. Supp. 3d 49, 63-64

(D.D.C. 2014) ("These Guidelines set forth the framework that governs not just the

Mid–Atlantic FMPs, but *all* FMPs nationwide.") (emphasis in original).

Related to actions discussed above requiring that river herring and shad be

added to the MSB FMP under the National Standard 1 Guidelines, this action was

also taken under the only regulation that defines the fisheries in the MSB FMP. *See*

50 C.F.R. §§648.1(a), 648.20 – 648.27.  The relevant regulation, 50 C.F.R.

§648.1(a), states:

> This part implements the fishery management plans (FMPs) for the
> Atlantic mackerel, squid, and butterfish fisheries (Atlantic Mackerel,
> Squid, and Butterfish FMP)… These FMPs and the regulations in this
> part govern the conservation and management of the above named
> fisheries of the Northeastern United States.

The FMP, as amended by Amendment 14, provides additional clarity on this point

and is effectively incorporated by reference.  It defines the fishery to include the

27

listed stocks along with potential management of river herring and shad.[1]  The

district court erred in characterizing this regulation as merely an "introductory

provision" without substance, Opinion at 16 n.9; the definition of the fishery is at

the heart of the regulatory scheme since it defines what stocks of fish all of the

subsequent management measures apply to.  Thus, Appellees' action terminating

rulemaking initiated through Amendment 15, which resulted in river herring and

shad not being added to the MSB FMP, was reviewable under section 305(f) of the

Act. 16 U.S.C. §1855(f).  Amendment 15 was an action under taken under the

relevant regulations.

 The district court also erred in concluding that termination of Amendment

15 was not an action by the Secretary.  Congress established a unique rulemaking

process for fisheries management under the Magnuson-Stevens Act.  This

"carefully calibrated scheme" utilizes eight regional fishery management councils

made up of state officials, the NMFS regional director, representatives of the

---

[1] Amendment 14 to the MSB FMP Final Impact Statement, Section 4.4
Management Unit/Scope, 109, available at:
http://www.nero.noaa.gov/regs/2013/August/13smbamend14prfeis.pdf ("The
management unit is currently all northwest Atlantic mackerel (*Scomber scombrus*),
longfin squid, *Illex illecebrosus*, and butterfish (*Peprilus triacanthus*) under U.S.
jurisdiction though an alternative in the amendment could effectively extend the
management unit to include RH/Ss [river herring/shad].").  The Final
Environmental Impact Statement and Final Rule implementing Amendment 14
were completed and published prior to the events of October 8, 2013. *See* 79 Fed.
Reg. 10,029 (Feb. 29, 2013).

regulated fishing community, and others with expertise in fisheries to first prepare

management plans, plan amendments, and regulations, and to submit such plans

and regulations to Appellees for review and approval based on whether they

comply with the Magnuson-Stevens Act and other applicable law. 16 U.S.C.

§§1852; 1853(c); 1854(a), (b); *see also* Opinion at 13 ("the MSA establishes a

carefully calibrated scheme under which the Secretary reviews the work of the

regional councils, and her decision is appealable to the courts.").  Under this

unique process, rulemaking begins at the councils when a new fishery management

plan or amendment is initiated. *See, e.g.*, *Campanale & Sons, Inc. v. Evans*, 311

F.3d 109, 111, 117 (1st Cir. 2002) ("In sum, '[t]he Magnuson–Stevens Act's main

thrust is to conserve the fisheries as a continuing resource through a mixed federal-

state regime; the FMPs are proposed by [] Councils but the final regulations are

promulgated by the Secretary through the Fisheries Service'" (quoting *Mass. v.

Daley*, 170 F.3d 23, 27–28 (1st Cir. 1999)).  Councils do not have independent

authority to manage fisheries outside of this process, and the responsibility for

meeting the Act's legal requirements rests with Appellees. Opinion at 15.

 Once it is determined that a stock needs conservation and management, the

decision whether to prepare a plan or amendment bringing that stock under

management in a FMP is not discretionary.  The Magnuson-Stevens Act

establishes a mandatory duty, stating that:

> Each Council *shall*, in accordance with the [Act] –
>
> (1) for each fishery under its authority that requires conservation and management, prepare and submit to the Secretary (A) a fishery management plan, and (B) amendments to each such plan that are necessary from time to time (and promptly whenever changes in conservation and management measures in another fishery substantially affect the fishery for which such plan was developed).

16 U.S.C. §1852(h)(1) (emphasis added).  It is the Secretary, however, who is the

decision-maker and is charged with ensuring this mandatory duty is met. *See*

*Flaherty v. Bryson*, 850 F. Supp. 2d 38, 54-55 (D.D.C. 2012) ("[NMFS's]

responsibilities therefore include ensuring compliance with Section 1852(h)'s

requirement that the Council prepare an FMP or amendment for any stock of fish

that 'requires conservation and management.'").  Thus, if rulemaking is required to

meet a mandatory duty and the rulemaking is terminated, Appellees are the party

responsible for that action. *See Guindon v. Pritzker*, 31 F. Supp. 3d 169, 197-98

(D.D.C. Mar. 26, 2014) ("If the Council fails to propose a necessary

[accountability measure]… NMFS must fulfill its statutory responsibility as a

backstop.").  Councils are also charged with preparing the proposed regulations

necessary to implement the plans and amendments they prepare, 16 U.S.C.

§1853(c), which are then finally approved and promulgated by Appellees. *Id.* at

§1854(b)(3).  Thus, while rulemaking is ultimately the responsibility of Appellees,

rulemaking begins at the Council, as proposed policies are prepared through a

public process, 16 U.S.C. §1852(h)(3), and the proposed regulations to implement the plans and plan amendments are drafted.  When rulemaking addressing a mandatory duty is terminated at the council, it is action by the Secretary as the legally accountable party.

The district court erred, however, in concluding that the mandatory duty established in §1852(h) is not a mandatory duty at all, but rather is discretionary because of the use of the word "may" in §1854(c) of the Act.  This interpretation flips the Act on its head – if the Secretary is not required to prepare and implement a Secretarial plan when rulemaking for mandatory requirements is stopped at the councils, nearly all of the mandatory duties under the Act could be avoided.  The district court's interpretation of this provision would have the effect of transforming nearly all of the "shalls" in the Act to "mays" and the Act's cores mandates into discretionary options for the councils, and Appellees.  This would be an absurd result and Courts avoid producing absurd results when interpreting statues.  *See, e.g.*, *United States v. Granderson*, 511 U.S. 39, 47 n.5 (1994) (dismissing an interpretation said to lead to an absurd result); *Dewsnup v. Timm*, 502 U.S. 410, 427 (1992) (Justice Scalia, dissenting) ("[i]f possible, we should avoid construing the statute in a way that produces such absurd results"); *Public Citizen v. Department of Justice*, 491 U.S. 440, 454 (1989) ("[w]here the literal reading of a statutory term would 'compel an odd result,' . . . we must search for

31

other evidence of congressional intent to lend the term its proper scope") (internal citation omitted).

This illuminates the fact that the use of the word "may" in this provision was carefully crafted by Congress in light of the entire statute, and does not alter the mandatory duty established in §1852(h) at all. The reason Congress used "may" in §1854(c)(1) is because there are two different types of conservation and management measures prepared through amendments and accompanying regulations by councils for Appellees' review and approval.

First, are those necessary to meet the mandatory requirements of the Magnuson-Stevens Act contained in sections 1852, 1853 and other sections of the Act. *See, e.g.*, 16 U.S.C. §1852(h)(1) ("Each Council *shall* … prepare and submit to the Secretary…") (emphasis added); 16 U.S.C. §1853(a)(1)-(15) ("Any fishery management plan which is prepared by any Council, or by the Secretary… *shall* … contain … establish … include ….") (emphasis added). These sections establish mandatory duties for the councils to prepare plans meeting the Act's requirements, and for the Appellees to either ensure the councils' plans comply with the law, or to prepare the plans themselves. 16 U.S.C. §1854(a), (b); 16 U.S.C. §1854(c).

Second, the Magnuson-Stevens Act also provides for the preparation of discretionary conservation and management measures by councils, which are similarly subject to approval or disapproval by Appellees depending upon whether

they comply with the Magnuson-Stevens Act and other applicable law. 16 U.S.C. §1853(b) ("Any fishery management plan which is prepared by any Council, or by the Secretary … *may* … require … establish … include ….") (emphasis added). Unlike amendments developed to meet the mandatory requirements of the Act, Appellees have no duty to act if a council fails to prepare discretionary conservation and management measures, even if the Secretary disapproves an amendment. 16 U.S.C. §1854(c).   In this case, *see infra* Section II.B.

As noted above, when Congress reauthorized the Magnuson-Stevens Act in 2006, it required Appellees to establish annual catch limits and accountability measures for all fisheries no later than 2011. *See* Magnuson–Stevens Fishery Conservation and Management Reauthorization Act of 2006, Pub. L. No. 109–479, §104(b), 120 Stat. 3575, 3584 (2007); 16 U.S.C. §1853 Note.  In relevant part, the Magnuson-Stevens Reauthorization Act amended §303(a) to provide that any fishery management plan must "establish a mechanism for specifying annual catch limits in the plan (including a multiyear plan), implementing regulations, or annual specifications, at a level such that overfishing does not occur in the fishery, including measures to ensure accountability." Pub. L. No. 109–479, §104(a)(10), 120 Stat. 3575, 3584 (2007) (codified as amended at 16 U.S.C. §1853(a)(15)).  As the court found in *Flaherty*, the Magnuson-Stevens Reauthorization Act "requires[d] the Council and NMFS to set ACLs and [accountability measures] by

33

2011 'such that overfishing does not occur in the fishery.' 16 U.S.C. §1853(a)(15).

The setting of ACLs and [accountability measures] necessarily entails a decision as

to which stocks require conservation and management. *Id.* §§1802(13),

1853(a)(15)." *Flaherty*, 850 F. Supp. 2d at 52. Thus, as they did with the herring

fishery at issue in *Flaherty*, Appellees had a firm deadline by which to determine

whether river herring and shad should be included in the MSB FMP. Courts have

held the "bright-line, date-specific deadlines for specified action" explicitly

identified in "statutory provision[s]," which tend to establish a nondiscretionary

duty. *Raymond Proffitt Found. v. EPA*, 930 F. Supp. 1088, 1098 (E.D. Pa. 1996)

(referencing *Natural Res. Def. Council v. Train*, 510 F.2d 692 (D. C. Cir. 1974)).

　　　Although this rulemaking process usually begins at the fishery management

councils, under the Magnuson-Stevens Act the Secretary is the responsible party

and decision-maker. All FMPs and regulations prepared to implement FMPs

proposed by councils are subject to final review and approval by the Secretary to

ensure that they comply with the requirements of the Magnuson-Stevens Act and

other applicable law. 16 U.S.C. §1854(a), (b). If a council fails to address and

resubmit a disapproved or partially approved plan or amendment, or to develop an

FMP or amendment for a fishery that requires conservation and management

within a reasonable period of time, the Secretary is required to prepare it herself.

16 U.S.C. §1854(c); *see infra* Section II.B. The Secretary ultimately promulgates

such regulations as may be necessary to carry out plans or any other provisions of the Magnuson-Stevens Act. 16 U.S.C. §1854(c).

This case involves rulemaking initiated to meet the Act's new mandatory requirement to add ACLs and accountability measures for all stocks of fish in need of conservation and management by 2011, the deadline for determining the composition of a fishery and establishing ACLs set in the 2006 Magnuson-Stevens Reauthorization Act. *See infra* Section II.B.  Appellees are responsible for ensuring that all FMPs and regulations required under the Act comply with the Magnuson-Stevens Act and other applicable law.  The termination of rulemaking initiated to comply with a mandatory duty to add river herring and shad to the MSB FMP was an action taken by Appellees under regulations implementing the MSB FMP, and is reviewable under 16 U.S.C. §1855(f).

## B. The District Court Opinion Contradicts the Magnuson-Stevens Act's Language and Congressional Intent to Make Fisheries Service Actions Reviewable

The district court erred in concluding that the Appellees' action was not reviewable because it was not published in the federal register. Opinion at 16.  The Magnuson-Stevens Act provides for review of actions by the Secretary taken under regulations implementing a fishery management plan. 16 U.S.C. §1855(f)(1).  It also provides that a petition for review be "filed within 30 days after the date on which the regulations are promulgated or the action is published in the federal

35

register, *as applicable*." *Id.* (emphasis added). Standard rules of statutory construction and the legislative history show that the Appellees' action here was a reviewable action under the Magnuson-Stevens Act.

In this case, Appellees chose not to publish their decision terminating rulemaking; thus, the 30-day statute of limitations for challenging a published action did not apply. This does not preclude review of the Agency's action under the Magnuson-Stevens Act's judicial review provision, however, as the termination of Amendment 15 meets the statutory definition of an action taken by the Secretary under regulations implementing an FMP, and Appellants' challenge was timely.

The district court erred because it ignored the words "as applicable" when concluding the termination of Amendment 15 was not reviewable because the action was not published in the Federal Register. *See* Opinion at 14, 16 (concluding that the Act "only" authorizes challenges to actions published in the Federal Register, but never analyzing the words "as applicable"). The words "as applicable," when given their ordinary meaning, indicate that a complaint must be filed within 30 days of the promulgation of a rule, or within 30 days of the publication of an action in the federal register. This does not mean, however, that every Agency action needs to be published to be reviewable. The words "as applicable" at the end of the sentence indicate only that the 30-day clock for

36

review is measured from the date of publication in the Federal Register, if publication in the Federal Register occurs.

Courts "construe a statutory term in accordance with its ordinary or natural meaning." *FDIC v. Meyer*, 510 U.S. 471, 476 (1994). Although many actions are published in the federal register, judicial review of an action is not precluded just because it might not have been published. Section 305(f) provides judicial review for "regulations promulgated by the Secretary" and "actions that are taken by the Secretary." *See* 16 U.S.C. §1855(f)(1), (2). The 30-day statute of limitations is clear – a petition must be filed "within 30 days after the date on which the regulations are promulgated or the action is published in the Federal Register, as applicable; ...". This clause, followed by the words "as applicable," means that the petition must be filed within 30 days of a regulations promulgation or an actions publication in the federal register, depending upon which of those events is relevant. *See In re Tober*, 688 F.3d 1160, 1163 (9th Cir. 2012) ("[w]hen several words are followed by a clause which is applicable as much to the first and other words as to the last, the natural construction of the language demands that the clause be read as applicable to all" (quoting *Porto Rico Ry., Light & Power Co. v. Mor*, 253 U.S. 345, 348, (1920))). Congress could have easily used language to exclude review of all actions not published in the federal register by using language indicating that "only" actions published in the federal register are

37

reviewable, but Congress chose not to.  Congress clearly knew how to draw

limitations on review, as in the same section of the Act, under §1855(f)(1)(A),

when Congress chose to exclude review under section 705 of the APA.

This reading is consistent with the legislative history of the 1990

reauthorization that amended the Magnuson-Stevens Act to add "actions" as

reviewable under the Act's judicial review provision. Pub. L. No. 101-627; §104

Stat 4436 (1990).   Congress did this in order to address the problem that under the

existing judicial review provision, the 30-day statute of limitations made it too

difficult for interested parties to challenge regulations.  The Senate Report

accompanying the amendment stated that actions were added as reviewable

because an affected party is unlikely to challenge a regulation until it has a

discernible practical application – that is, until the agency takes an action under the

regulation that has a material adverse effect on that party. S. Rep. No. 101–414 at

22 (1990), *as reprinted in* 1990 U.S.C.C.A.N. 6276, 6298.  The short limitations

period in the pre-1990 statute, however, made such challenges untimely:

> [A] substantial period may lapse between the time a regulation to
> implement a fishery management plan is published and the time action
> is taken by the Secretary pursuant to the regulation. In many
> instances, it is only when such an action is taken that participants in
> the fishery can assess whether a petition for judicial review is
> necessary. The time lapse between publication o[f] a regulation and
> Secretarial action may deny individuals the opportunity *to challenge*

38

> *regulations* at the point in time when they can determine that such a
> challenge is necessary. The amendments made by this subsection
> would allow a challenge within 30 days of the time that a Secretarial
> action is published.

*Id.* While the Senate report reflects the new statutory language setting a statute of

limitations of 30 days for actions published in the federal register, the legislative

history demonstrates that the intent was to make actions under regulations

reviewable, and not to limit challenges to *only* challenges published in the federal

register.

This is confirmed by the House Report, which emphasizes the importance of

making review of actions available to interested parties:

> Under current law, a management plan or regulation can only be
> challenged in court within 30 days after publication in the Federal
> Register. Since some management regulations are prospective, this
> prevents interested parties from challenging those regulations at the
> time they are actually implemented. The amendments made by this
> subsection will allow a challenge within 30 days of the time that a
> regulation is implemented.

H.R. Rep. No. 101–393, at 28 (1990). The House amendment's sponsor,

Representative Jones, made the same point. He stated that the amendment would

"permit[ ] suit" to challenge a regulation "either when initial management plan

regulations are issued or when implementing actions are put into effect." 136

Cong. Rec. H229–06 (daily ed. Feb. 6, 1990) (statement of Rep. Jones).

39

The legislative history demonstrates that Congress' intent was to increase the opportunity for judicial review of regulations by allowing access to the courts at the time when an action under a regulation is taken because in many cases, it is only then that an interested party may understand that a challenge is necessary. As is the case here, many actions under regulations are not published in the Federal Register for a number of reasons. Denying access to the courts under such circumstance would be inconsistent with the intent of Congress.

In *Flaherty* and *Oceana*, the courts held that nearly identical failures by the Fisheries Service to include river herring and shad in the Atlantic Herring and MSB FMPs were unlawful under the Magnuson-Stevens Act. The courts in those cases reviewed the decisions even though the rulemaking on whether to include river herring and shad in the fishery management plans was also terminated at the council stage and no regulation or record of the decision was published in the federal register. *See* Amendment 4 Final Rule*,* 76 Fed. Reg. 11,373 (Mar. 2, 2011), JA___; Omnibus Amendment Final Rule, 76 Fed. Reg. 60,606 (Sep. 29, 2011), JA___. The only difference between those actions and the action challenged here is that there, the rulemaking was packaged in broader amendments under which other unrelated rules were eventually submitted to the Agency for review and approval. *Id*. Similar to the *Flaherty* and *Oceana* decisions, the district court should have reviewed the decision to terminate rulemaking that would have added

40

river herring and shad to the MSB FMP through Amendment 15 under the

Magnuson-Stevens Act's judicial review provision and Congressional intent to

make actions taken under regulations reviewable by the courts.

## II.    THE DISTRICT COURT ERRED IN DISMISSING APPELLANTS' FIRST CLAIM AS NOT REVIEWABLE UNDER THE ADMINISTRATIVE PROCEDURE ACT

The district court erred in dismissing Appellants' first claim on grounds that

it was not reviewable under the APA. *See* Opinion 17, 18, 30, JA___, __, __

(acknowledging that the APA provides an alternative basis for judicial review if

review is unavailable under the MSA).  The APA provides a right to judicial

review for agency action, 5 U.S.C. §702, and defines agency action broadly to

include an agency's failure to act. 5 U.S.C. §551(13).  Reviewable actions are

limited to "final agency action[s] for which there is no other adequate remedy in a

court." 5 U.S.C. §704.  If Appellants' claim is found to be unreviewable under the

Magnuson-Stevens Act's judicial review provision, it is reviewable final agency

action under APA §702 on two grounds: (1) the termination of the Amendment 15

rulemaking process was an agency action that should be set aside under §706(2),

and (2) the failure to add river herring and shad to an FMP despite a discrete,

legally required statutory duty is an agency action unlawfully withheld or

unreasonably delayed that should be compelled under §706(1).  Allowing the

41

Agency to avoid review under the APA is "contrary to law" and inconsistent with the Magnuson-Stevens Act's language, structure, and Congressional intent.

## A. Appellants' Claim Was Entitled to the Presumption of Reviewability

As an initial matter, the district court erred by ignoring the general presumption that agency decisions are reviewable under the APA. *E.g.*, *Kucana v. Holder*, 558 U.S. 233, 251-52 (2010). Outside the context of an enforcement decision, as in *Heckler v. Chaney*, 470 U.S. 821 (1985), a court starts "with a presumption of reviewability, which is only rebutted by an affirmative showing that the statute's allocation of discretion is so broad that the courts simply have no standards to apply." *Robbins v. Reagan*, 780 F.2d 37, 47 (D.C. Cir. 1985); *see also, e.g.*, *Kucana*, 558 U.S. at 251-52 (reiterating presumption of reviewability). An agency refusal to engage in rulemaking constitutes a denial under 5 U.S.C. §551(13), and is generally reviewable. *See Mass. v. EPA*, 549 U.S. 479, 527-28 (1985); *Marshall Cnty. Health Care Auth. v. Shalala*, 988 F.2d 1221, 1224 (D.C. Cir. 1993). The district court's failure to consider this presumption ignores this well-established caselaw.

## B. The Fisheries Service's Termination of Amendment 15 is a Final Agency Action Reviewable Under the APA

The Fisheries Service's termination of Amendment 15 is a final agency action reviewable under 5 U.S.C. §706(2). The district court misinterpreted Appellants' complaint as a challenge brought against an action taken by the Mid-

42

Atlantic Council, and erroneously dismissed the case based on its conclusion that "[a]n action by the Mid-Atlantic Council does not qualify as an 'agency action' under the APA." *See* Opinion at 18, 28 ("Plaintiffs . . . seek to challenge a non-final action of the Mid-Atlantic Council"), JA___, __.  The district court thus erroneously dismissed Appellants' first claim.

In fact, Appellants' complaint was squarely brought against Appellees and it is the termination of their rulemaking, which in this case took place at the council stage of developing the rule, that is a final agency action reviewable under the APA. *See* 5 U.S.C. §§551, 704.  The APA defines "agency action" as "the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act." *Id.* §551(13).  The termination of the preparation of Amendment 15 was a denial of the proposed rule required to meet the Fisheries Service's mandatory duty to add stocks of river herring and shad because they are in need of conservation and management.  The termination of Amendment 15 falls within what this Court has acknowledged is the "undoubtedly . . . broad sweep" of the term "agency action." *Indep. Equip. Dealers Ass'n v. EPA*, 372 F.3d 420, 427 (D.C. Cir. 2004).

The termination of Amendment 15 is a *final* agency action.  An agency action is "final" when two conditions are satisfied:

First, the action must mark the consummation of the agency's decisionmaking process—it must not be of a merely tentative or

43

interlocutory nature. And second, the action must be one by which rights or obligations have been determined, or from which legal consequences will flow.

*Nat'l Ass'n of Home Builders v. U.S. Army Corps of Eng'rs*, 417 F.3d 1272, 1278

(D.C. Cir. 2005) (quoting *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997)).

The Fisheries Service's termination of Amendment 15 marks the

consummation of its decision-making and is not tentative or interlocutory.  This

decision represents the last word on whether river herring or shad will be added to

the Atlantic Mackerel Squid and Butterfish FMP.  As discussed above, the

Magnuson-Stevens Reauthorization Act of 2006 established a statutory deadline of

2011 to establish ACLs for all stocks of fish in need of conservation and

management, which requires that they included in fishery management plans.[2]  The

Fisheries Service is now four (4) years past its deadline for action, and there is no

other rulemaking underway to consider the issue.  Moreover, the Fisheries Service

recognized that river herring required conservation and management dating to at

least 2006 when it identified them as severely depleted and listed river herring as a

"*Species of Concern*," and it later failed to respond to a request for emergency

---

[2] An unreasonable delay claim under the APA does not require the existence of a statutory deadline. *See Cobell v. Norton*, 240 F.3d 1081, 1096 (D.C. Cir. 2001); *see also Biodiversity Legal Found. v. Norton*, 285 F. Supp. 2d 1, 7-8 (D.D.C. 2003) (drawing the distinction between nondiscretionary duties with date-certain deadlines cognizable under a citizen suit and mandates with "general duties of timeliness"  that should be vindicated under an APA unreasonable delay suit).

action from the Atlantic States Marine Fisheries Commission in 2009. Compl. ¶¶51, 54, JA___, __.  After Amendment 15 was terminated, the Mid-Atlantic Council passed a motion approving the creation of a working group to study issues related to river herring and shad management for at least 3 years, however the motion's sponsor indicated it was his intent for the working group to operate "outside" the requirements of the MSA. Compl. ¶¶85, 86, JA___, __.  Thus, now nearly ten (10) years since the Fisheries Service recognized the severely depleted status of river herring and listed them as a Species of Concern, and four years since the statutory deadline requiring they be added to an FMP, with no other rulemaking proceeding to consider the issue, the termination of Amendment 15 is the consummation of their decision-making.

The termination of Amendment 15 is "final" because legal consequences flow from this action. *See Nat'l Ass'n of Home Builders*, 417 F.3d at 1278.  As a result of the termination of Amendment 15, the Mid-Atlantic Council and Appellees are not required to prepare and implement conservation measures establishing status determination criteria, ACLs and accountability measures that prevent overfishing and rebuild overfished stocks, essential fish habitat, and many other measures required by law once a stock of fish is added to a fishery management plan. *See* 16 U.S.C. §1853(a)(1)-(15); 1854(e).  In turn, fishing vessels participating in the fishery will not be subject to enforcement for

45

complying with such conservation and management measures, which are at the heart of the Magnuson-Stevens Act. *Id.* 16 U.S.C. §1857(1)(A). As a result, fishermen are able to catch more river herring and shad than would otherwise be required by law, without accountability for their actions.

### C. The District Court Erred In Concluding that the Agency Did Not Have a Mandatory Duty to Add River Herring and Shad to the MSB FMP, and Thus That the Failure to Add These Stocks to the MSB FMP Was Not Reviewable Under the APA

The district court failed to construe the Magnuson-Stevens Act as a whole, and mischaracterized the Complaint to hold that the Fisheries Service did not have a mandatory duty to add river herring and shad to the MSB FMP. *See* Opinion at 26-29, JA___-__. Under the APA, a court is authorized to "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. §706(1). However, a claim is not cognizable under §706(1) unless the plaintiff can show that an agency has "failed to take a discrete agency action that it is required to take." *Norton v. S. Utah Wilderness Alliance*, 542 U.S. 55, 64 (2004). Under the Magnuson-Stevens Act, the Agency has a mandatory duty to add all stocks of fish in need of conservation and management to an FMP, 16 U.S.C. §1852(h); 1854(e), and Appellants successfully demonstrated the Agency's failure to take this legally required action.

46

1. **<u>The District Court Failed to Read the Magnuson-Stevens Act as a Whole When It Found That the Agency Was Not Required to Take a Discrete Legally Required Action</u>**

It is a cardinal rule of statutory construction that a statute should be read as a whole, shaped by its definitions, its findings and purposes, and its relationship to its other directives. *Green v. Bock Laundry Mach. Co*., 490 U.S. 504, 528 (1989). Here, the district court read at least three provisions of the Magnuson-Stevens Act out of the broader context of the Act, and as a result erred when it concluded that the Agency had no discrete, legally required duty to add river herring and shad to an FMP.

## 16 U.S.C. §1852(h)

First, the district court held that 16 U.S.C. §1852(h) (councils "shall" prepare and submit to the Secretary an FMP for each fishery that requires conservation and management) does not provide the Secretary with a mandatory duty in this case. *See* Opinion at 28, JA___.  The court appears to let the Agency off the hook because it characterizes Appellants' case as a challenge to a "non-final action of the Mid-Atlantic Council."  Opinion at 28, JA___.  In the court's view, because the rulemaking was terminated at the council stage and the Mid-Atlantic council did not formally submit a draft plan amendment to the Secretary, there was nothing for the Fisheries Service to review and "set aside" under 5 U.S.C. §706(2). *See* Opinion at 28, JA___.   However, the district court acknowledges that

47

Appellants did not challenge an action of the Council or even name the Council as

Defendants, because Appellants correctly recognized councils have no power to

create legal obligations. *See* Opinion at 15, JA___.  Regardless, the district court

erred by failing to give weight to cases cited by Appellants showing that §1852(h)

establishes a mandatory duty.  The fact that those cases were decided under the

Magnuson-Stevens Act's judicial review provision and APA §706(2) instead of

APA §706(1), was dispositive.[3]  This ruling is incorrect.  It would be inconsistent

with the Magnuson-Stevens Act to only require the Agency to meet its core

mandatory duty to ensure management of all stocks of fish requiring conservation

and management, *see 16* U.S.C. §§1852(h),1854(a), when a council happens to

send an (incomplete) amendment to it for review as it did in *Flaherty*, 850 F. Supp.

2d at 54, yet allow the same decision terminating the applicable rulemaking at the

---

[3] As discussed above, in *Flaherty* and *Oceana*, the courts reviewed nearly identical failures by the Fisheries Service to include river herring and shad in the Atlantic Herring and MSB FMPs and found them unlawful under the Magnuson-Stevens Act.  The courts there reviewed the decisions even though the applicable rulemaking on the issue was also terminated at the council stage. *See* Amendment 4 Final Rule*,* 76 Fed. Reg. 11,373 (Mar. 2, 2011); Omnibus Amendment Final Rule, 76 Fed. Reg. 60,606 (Sep. 29, 2011).  The only difference in the actions is that in those cases, the amendments under which rulemaking was originally considered were eventually submitted to the Agency for review and approval due to the inclusion of other unrelated management measures. *Id.* Because the courts reviewed those decisions under the Magnuson-Stevens Act's judicial review provision, neither court needed to reach the issue of whether the councils' failure to add river herring and shad as stocks to the FMPs could have been reviewed under 5 U.S.C. §706(1) for the Agency's unlawful failure to act despite a statutory obligation and deadline.

council stage to stand without judicial review simply because there were no other (unrelated) management measures submitted to the Agency for review, as was the case here. If left to stand, this interpretation would completely remove the essential function of the Agency as the legally responsible party to backstop council activities to ensure compliance with the Act. As discussed further below, Congress intended all stocks of fish requiring conservation and management to be included in fishery management plans, and for the Appellees to ensure such plans are prepared and implemented.

## 16 U.S.C. §1854(e)

Second, the district court asserted that §1854(e) ("Rebuilding Overfished Fisheries") does not impose a discrete mandatory duty to add river herring and shad stocks to an FMP because the Secretary has not officially identified them as overfished. *See* Opinion at 28, JA___.  Under the district court's interpretation, even if the stocks were identified as overfished, the Agency's only mandatory duty would be to "report" their status to Congress under 16 U.S.C. §1854(e)(1). *See* Opinion at 28-29, JA___-__. This misses the point and contradicts the plain language of the Act. Despite the district court's suggestion otherwise, Appellants never argued that the Fisheries Service' duty was to identify river herring and shad as overfished under 16 U.S.C. §1854(e)(1). Instead, Appellees should have recognized river herring and shad as overfished given the best available science

49

and their own admissions under 16 U.S.C. §1854(e)(2) and notified the council to take action to end overfishing and rebuild the socks, which would have required they be added to the FMP in order to prepare and implement the necessary management measures.  As discussed above, the unique rulemaking process in the Magnuson-Stevens Act assigns certain initial obligations to the Council, *i.e.* §1854(e)(3) (preparing a rebuilding plan), and others to the Secretary, *i.e.* §1854(e)(5) (preparing a plan if the council fails to do so), at various points in the process, none of which relieves the Secretary from her obligations to ensure that all mandatory obligations are met. *See* 16 U.S.C. §1854(e)(2) (requiring immediate action to end overfishing and rebuild affected populations if a stock is determined "at any time" to be overfished).  Assuming all facts in the plaintiffs' favor, Appellants presented compelling facts showing that river herring and shad are overfished, including the most recent science and peer-reviewed stock assessment results and the Fisheries Service' and the Council's descriptions of river herring as severely declining and depleted, *see* Compl. ¶¶ 48-52, 86, JA___-__, __.  Despite this, the Fisheries Service has avoided officially designating them as "overfished" in its report to Congress, or recognizing them as overfished and notifying the council to initiate action to include them in a plan and rebuild their populations under 16 U.S.C. §1854(e)(2), which would have required they be added to the MSB FMP.  Appellants presented a plausible claim that should have been reviewed

by the district court under APA §706(1).

In holding that NMFS's failure to add river herring and shad to the MSB FMP was not reviewable under §706(1), the district court erroneously states that this case is like *Norton v. S. Utah Wilderness Alliance*, 542 U.S. 55 (2004) because the statute, 16 U.S.C. §1854(e), leaves the decision of whether to designate a fish as overfished to the agency's discretion leaving the court with no power to compel action. *See* Opinion at 25 (citing *Norton v. S. Utah Wilderness Alliance*, 542 U.S. 55, 61 (2004)), JA___.  In *Norton,* plaintiffs sought to compel the agency to limit off-road vehicle use in federal lands designated as wilderness areas, and the Supreme Court held that even though the Federal Land Policy and Management Act contained a broad mandate to manage so as not to impair these areas for preservation, the agency had the discretion to determine how to achieve this objective. *Norton*, 542 U.S. at 55-56.  Specifically, the land use plan that projected present and future uses and priorities for the designated areas did not create a legally binding commitment to manage in that manner under the Act, so there were no enforceable duties under 5 U.S.C. §706(1). *Id*. at 66-67.  Unlike the challenged statute in *Norton*, the the Magnuson-Stevens Act clearly requires the Agency to achieve its objectives with discrete, legally-required actions, and Appellants did not rely on non-binding legal documents to impose a duty on the agency.  The district court erred when it relied on *Norton* to read the duty to conserve and

51

manage river herring and shad right out of the Act.

## 16 U.S.C. §1854(c)

Finally, although §1854(c) ("Preparation and Review of Secretarial Plans") is the backstop to ensure that all fisheries in need of conservation and management receive the protection intended by Congress under the Act, the district court held that there is no mandatory duty to act under this provision because in its view the word "may" in this provision gives the Secretary the discretion to avoid her statutory responsibilities unless a plan is actually submitted. *See* Opinion at 26, JA___ ("As our Court of Appeals has held, 'when a statute uses both 'may' and 'shall,' the normal inference is that each is used in its usual sense – the one act being permissive, the other mandatory.'").

However, as Appellants argued to the district court, Congress carefully wrote §1854(c)[4] using both the word "may" and "shall" because there are both discretionary and mandatory conservation and management measures that may be

---

[4] 16 U.S.C. §1854(c) (Preparation and review of Secretarial plans: **(1)** The Secretary may prepare a fishery management plan, with respect to any fishery, or any amendment to any such plan, in accordance with the national standards, the other provisions of this chapter, and any other applicable law, if-- **(A)** the appropriate Council fails to develop and submit to the Secretary, after a reasonable period of time, a fishery management plan for such fishery, or any necessary amendment to such a plan, if such fishery requires conservation and management; **(B)** the Secretary disapproves or partially disapproves any such plan or amendment, or disapproves a revised plan or amendment, and the Council involved fails to submit a revised or further revised plan or amendment; or **(C)** the Secretary is given authority to prepare such plan or amendment under this section.").

included in fishery management plans under the Magnuson-Stevens Act. *See* Opinion at 27 n.13, JA___.  Thus, when a draft plan is submitted to the Fisheries Service, disapproved, and the council fails to resubmit a plan addressing the identified legal deficiencies, the Fisheries service "may" decline to address discretionary conservation and management measures, but "shall" address the deficient conservation and management measures that are required under the Act. "The Act plainly gives NMFS the final responsibility for ensuring that any FMP is consistent with the [Magnuson-Stevens Act's] National Standards, and 'the overall objectives' of the Act." *Flaherty* 850 F. Supp. 2d at 54 (citing *N.C. Fisheries Ass'n*, 518 F. Supp. 2d 62, 71–72 (D.D.C. 2007); *see also Guindon v. Pritzker*, 31 F. Supp. 3d 169, 197-98 (D.D.C. 2014) ("If the Council fails to propose a necessary [accountability measure], NMFS must fulfill its statutory responsibility as a backstop.").  There is indeed caselaw to suggest that the use of "may" and "shall" will ordinarily mirror common usage in a statute, however, these words must also be read in their broader statutory context. *See, e.g.*, *Escoe v. Zerbst*, 295 U.S. 490, 493 (1935) ("[d]oubt . . . is dispelled when we pass from the words alone to a view of [the statute's] ends and aims").  *See Commonwealth of Pa. v. Lynn*, 501 F.2d 848, 854 (D.C. Cir. 1974) ("discerning Congress's intent to bestow or withhold discretion … is not a simple matter of tallying the 'shalls' and 'mays' and finding that the 'mays' have it"); *United States v. Garner*, 767 F.2d 104, 111-12

53

(5th Cir. 1985) (in the context of a "program of indefinite duration requiring annual appropriations," "courts have almost uniformly eschewed a mechanical reliance on one or two discretionary terms in an act in favor of a careful examination of the statute as a whole in the light of its purposes and legislative history"); *see also Bell Atl. Tel. Companies v. FCC*, 131 F.3d 1044, 1047 (D.C. Cir. 1997) ("[T]extual analysis is a language game played on a field known as 'context.'").  The district court's narrow reading of this provision ignored a careful examination of the statute as a whole.

The context here demands that the Agency "shall" prepare an FMP or amendment under 16 U.S.C. §1854(c) when it is required to satisfy mandatory obligations such as those under 16 U.S.C. §1852(h)(1) and 16 U.S.C. §1853(a)(1)-(15), and "may" prepare an FMP or amendment to implement a discretionary obligation, such as 16 U.S.C. §1853(b)(1)-(14).  An example of this was when Appellants initiated an amendment to establish ACLs and accountability measures for the New England Small-Mesh Multispecies Fishery, 77 Fed. Reg. 19,138 (Mar. 30, 2012), JA___, in order to bring the fishery into compliance with "required provisions" when it became apparent that the Council would not have an amendment ready to submit consistent with 16 U.S.C. §1853(a)(15) by the 2011 statutory deadline. *See* Defendants' Notice of Secretarial Amendments at ¶4, *Flaherty*, 850 F. Supp. 2d 38 (Case No. 11-0660 (GK)), ECF No. 84.  However,

54

Appellees may not have a mandatory duty to develop an FMP or amendment to protect deep sea corals under the "discretionary provisions" found in §1853(b)(2) should the Mid-Atlantic Council terminate a deep sea corals amendment currently under development. *See* 16 U.S.C. §1853(b)(2)(B); *see also* Mid-Atlantic Fishery Management Council, Draft Deep Sea Corals Amendment (Jan. 2015), available at: http://www.mafmc.org/s/Corals-PID_2014-1-2-FINAL-o8ub.pdf. Thus, in the context of the Magnuson-Stevens Act's directive that fishery management plans "shall" include the stocks of fish that require conservation and management, 16 U.S.C. §1852(h)(1); *Flaherty* 850 F. Supp. 2d at 55 ("That Section requires FMPs and necessary amendments for all 'stocks of fish which can be treated as a unit for purposes of conservation and management' and which are in need of conservation and management. *Id.* §§1802(13)(a), 1852(h)(1)"), and to establish ACLs and accountability measures for all stocks in need of conservation and management to an FMP by 2011, the statutory framework supports the argument that "may" meant "shall" in this instance.

In view of all of the Agency's mandatory obligations under the Magnuson-Stevens Act, the district court failed to interpret these provisions as part of a whole consistent with the language, structure, findings, purposes, and policies of the Act. *See SEC v. C.M. Joiner Leasing Corp.*, 320 U.S. 344, 350-51 (1943) ("courts will construe the details of an act in conformity with its dominating general purpose,

will read text in the light of context and will interpret the text so far as the meaning of the words fairly permits so as to carry out in particular cases the generally expressed legislative policy."); *see also Util. Air Regulatory Grp. v. EPA*, 134 S. Ct. 2427, 2441 (2014) ("[T]he act is far from a *chef d'oeuvre* of legislative draftsmanship.  But we … must do our best, bearing in mind the fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme.") (citation and quotation omitted); *U.S. Nat'l Bank v. Indep. Ins. Agents of Am.*, 508 U.S. 439, 455 (1993) ("Over and over," this Court has "stressed that '[i]n expounding a statute, we must *not* be guided by a *single sentence or member of a sentence*, but look to the provisions of the *whole law*, and to its object and policy.'") (internal citation omitted) (emphasis added).  The overriding purpose of the Magnuson-Stevens Act is to place all stocks of fish that require conservation and management under "sound management." *See* 16 U.S.C. §1801(a)(5), (b)(1)-(5).  While Congress gave the Secretary discretion in §1854(c) so that she is not forced to develop an amendment every time the Council either proposes an amendment she cannot approve or fails to take an action desired by an interested party (Congress could not predict all of the potential actions that might be identified by councils or the public when it enacted the statute), she does have to exercise her powers, functions, and duties consistent with the national policy to manage all stocks of

fish requiring conservation and management.

## 2.  <u>The District Court Did Not Accurately Characterize the Complaint</u>

The district court erroneously stated that Appellants did not allege agency inaction that qualifies for judicial review under §706(1). *See* Opinion at 24, JA___ ("It nowhere alleges any independent failure by NMFS to take action to protect the river herring and shad.").  Although the court went on to provide its analysis under this standard, this is a misreading of the Complaint.  First, Appellants' complaint cites either specifically to APA §706(1) or this standard in its narrative form in numerous places, including under its first claim for relief. Compl. ¶102, JA __; *see also* ¶¶2, 3, 4, 6, 8-11, 45, 87, JA___, __, __-__, __, __.

Second, Appellants' complaint included numerous allegations demonstrating Appellees failure to act to conserve and manage river herring and shad consistent with the Act, and the district court was required to assume all factual allegations as true. *See U.S. v. Gaubert*, 499 U.S. 315, 327 (1991); *Felter v. Kempthorne*, 473 F.3d 1255, 1257 (D.C. Cir. 2007).  Further, the Appellants' legal conclusions – that NMFS independently failed to protect river herring and shad – are fully supported by the facts alleged as shown below. *See Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1113 (D.C. Cir. 2000) (at motion to dismiss plaintiffs should be granted the benefit of all inferences that can be derived from the alleged facts).

In their Complaint, Appellants demonstrated the Agency's longstanding failure to conserve and manage river herring and shad in the MSB FMP despite the best available science demonstrating that overfishing in federal fisheries had contributed to severely depleted river herring and shad stocks, Compl. ¶¶48-50,53, 54, JA___, __-__; Mid-Atlantic populations are particularly imperiled, Compl. ¶50, JA___; abundance has declined to historic lows in recent decades, and commercial landings have declined for more than 50 years, Compl. ¶48, JA___; and scientific studies suggested that the declines were directly attributable to fishing in the MSB Fishery, Compl. ¶¶59-61, JA___-__.  The Agency also failed to include river herring and shad in their Standardized Bycatch Reporting Methodology despite considerable uncertainty in bycatch estimates for these species. Compl. ¶62, JA___.

In their Complaint, Appellants demonstrated that the Agency did nothing to conserve and manage river herring in federal waters despite unsuccessful management by the Atlantic States Marine Fisheries Commission that failed to rebuild depleted populations even with moratoriums on fishing in state waters. *See* Compl. ¶¶ 53, 54, JA___-__ .  Further, the Fisheries Service refused to take emergency action to protect and monitor these species when the Atlantic States Marine Fisheries Commission and both regional councils requested it based on significant concerns about bycatch in federal fisheries. *See* Compl. ¶54, JA___.

58

Appellees' designation of river herring as a "species of concern" is further evidence that they understood the species required conservation and management, but the designation itself affords these species no protection under the law. *See* http://www.nmfs.noaa.gov/pr/species/concern/ ("'Species of concern' status does not carry any procedural or substantive protections under the ESA.").  Despite this, the Agency failed to implement catch limits or other measures necessary to reliably monitor catch, protect the ocean ecosystem, or reduce the incidental catch of river herring and shad in the MSB FMP. *See* Compl. ¶¶55-58, JA___-__.  Appellants clearly showed the Fisheries Service's inaction in the face of a need for conservation and management in federal waters and the district court erred in not accepting all of their factual allegations as true.

## CONCLUSION

For all these reasons, this Court should reverse the district court's opinion and order dismissing Appellants' claims.

DATED:    March 16, 2015            Respectfully submitted,

/s/ Roger M. Fleming
ROGER M. FLEMING
D.C. Circuit Court No. 53917
ERICA A. FULLER
D.C. Circuit Court No. 53919
STEPHEN E. ROADY
D.C. Bar No. 926477
EARTHJUSTICE
1625 Massachusetts Avenue, N.W.

59

Washington, D.C. 20036
202-667-4500 Telephone
202-667-2356 Facsimile
rfleming@earthjustice.org
efuller@earthjustice.org
sroady@earthjustice.org

*Counsel for Appellants*

60

## CERTIFICATE REGARDING WORD LIMITATION

Counsel hereby certifies, in accordance with Federal Rule of Appellate Procedure 32(a)(7)(C), that the foregoing **Proof Brief for Appellants** contains 13,924 words, as counted by counsel's word processing system, and thus complies with the applicable word limit established by the Court.

DATED:  March 16, 2015

/s/ Roger M. Fleming
Roger M. Fleming

## CERTIFICATE OF SERVICE

I hereby certify that on this 16th day of March, 2015, I served a copy of the foregoing **Proof Brief for Appellants** on all registered counsel through the Court's electronic filing system (CM/ECF).

/s/ Roger M. Fleming___
Roger M. Fleming